ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS** 2010 FEB 23  AM 11: 04
**DALLAS DIVISION**

DEPUTY CLERK _____ RR

| | |
|---|---|
| Patent Compliance Group, Inc.,<br>Relator,<br><br>v.<br><br>Hunter Fan Co.,<br>Defendant. | **JURY TRIAL DEMANDED**<br><br>#38511<br><br>Case No. _____<br><br>**3-10CV0359-P** |

## COMPLAINT FOR FALSE MARKING

*Qui tam* relator Patent Compliance Group, Inc. ("Patent Compliance Group"), for its

Complaint against Defendant Hunter Fan Co. ("Defendant"), alleges, based on its own personal

knowledge with respect to its own actions and based upon information and belief with respect to

all others' actions, as follows:

### BACKGROUND

1.      This is an action for false patent marking under Title 35, Section 292, of the

United States Code.

2.      Defendant has violated 35 U.S.C. § 292(a) by marking unpatented articles with

the purpose of deceiving the public.  More specifically, Defendant has, with the purpose of

deceiving the public:

      (i)      marked products with patents that have expired and, therefore, do not and
cannot cover the marked products; and

      (ii)     marked products with patents having a scope which does not cover the
marked products.

3.      The marking and false marking statutes exist to give the public notice of patent

rights.  Congress intended the public to rely on marking as a ready means of discerning the status

- 1 -

of intellectual property embodied in an article of manufacture or design.  Federal patent policy

recognizes an important public interest in permitting full and free competition in the use of ideas

which are, in reality, a part of the public domain.

      4.      False patent marking is a serious problem.  Acts of false marking deter innovation

and stifle competition in the marketplace.  If an article that is within the public domain is falsely

marked, potential competitors may be dissuaded from entering the same market.  False marks

may also deter scientific research when an inventor sees a mark and decides to forego continued

research to avoid possible infringement.  False marking can cause unnecessary investment in

design around or costs incurred to analyze the validity or enforceability of a patent whose

number has been marked upon a product with which a competitor would like to compete.

Furthermore, false marking misleads the public into believing that a patentee controls the article

in question (as well as like articles), externalizes the risk of error in the determination, placing it

on the public rather than the manufacturer or seller of the article, and increases the cost to the

public of ascertaining whether a patentee in fact controls the intellectual property embodied in an

article.  In each instance where it is represented that an article is patented, a member of the public

desiring to participate in the market for the marked article must incur the cost of determining

whether the involved patents are valid and enforceable.  Failure to take on the costs of a

reasonably competent search for information necessary to interpret each patent, investigation into

prior art and other information bearing on the quality of the patents, and analysis thereof can

result in a finding of willful infringement, which may treble the damages an infringer would

otherwise have to pay.  False markings may also create a misleading impression that the falsely

marked product is technologically superior to previously available ones, as articles bearing the

term "patent" may be presumed to be novel, useful, and innovative.

- 2 -

5.      The false marking statute explicitly permits *qui tam* actions.  By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking.

6.      Patent Compliance Group, on its own behalf and on behalf of the United States, seeks an award of monetary damages of not more than $500 for each of Defendant's violations of 35 U.S.C. § 292(a), one-half of which shall be paid to the United States pursuant to 35 U.S.C. § 292(b).

## THE PARTIES

7.      Patent Compliance Group is a Texas corporation with its principal place of business at 4223 Buena Vista Street, Suite 4.

8.      Patent Compliance Group exists to conduct all lawful business, including but not limited to enforcing the false marking statute.

9.      Patent Compliance Group represents the United States and the public, including Defendant's existing and future competitors.

10.      Defendant is a Delaware corporation with its principal place of business at 2500 Frisco Ave., Memphis, TN 38114.

11.      Defendant regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.  Defendant can be served with process through any of its agents including officers or directors or its registered agent, National Registered Agents, Inc., 16055 Space Center, Suite 235, Houston, TX, 77062.

### JURISDICTION AND VENUE

12.     This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. §§
1331 and 1338(a).

13.     This Court has personal jurisdiction over Defendant.  Defendant has conducted
and does conduct business within the State of Texas.  Defendant, directly or through subsidiaries
or intermediaries, offers for sale, sells, marks and/or advertises the products that are the subject
of this Complaint in the United States, the State of Texas, and the Northern District of Texas.

14.     Defendant has voluntarily sold the products that are the subject of this Complaint
in this District, either directly to customers in this District or through intermediaries with the
expectation that the products will be sold and distributed to customers in this District.  These
products have been and continue to be purchased and used by consumers in the Northern District
of Texas.  Defendant has committed acts of false marking within the State of Texas and, more
particularly, within the Northern District of Texas.

15.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1395(a),
because (i) Defendant's products that are the subject matter of this cause of action are advertised,
marked, offered for sale, and/or sold in various retail stores and/or on the Internet in this District;
(ii) a substantial part of the events or omissions giving rise to the claim occurred in this District;
and (iii) Defendant is subject to personal jurisdiction in this District, as described above.

16.     Patent Compliance Group brings this action under 35 U.S.C. § 292(b), which
provides that any person may sue for civil monetary penalties for false patent marking.

### FACTS

17.     Patent Compliance Group incorporates by reference the foregoing paragraphs as if
fully set forth herein.

18.     Defendant is a large, sophisticated company with approximately 450 employees.

19.     Defendant has, or regularly retains, sophisticated legal counsel.

20.     Defendant has decades of experience applying for patents, obtaining patents, and/or litigating in patent infringement lawsuits.

21.     Defendant knows that a patent expires; an expired patent cannot protect any product; a patent does not cover any product that is not within the scope of its claims; a patent claiming methods of manufacturing does not cover the products that are the result of such manufacturing; and that a patent found invalid does not cover any product.

22.     Each false marking on the products identified in this Complaint is likely to, or at least has the potential to, discourage or deter persons and companies from commercializing competing products.

23.     Defendant's false marking of its products has wrongfully quelled competition with respect to such products thereby causing harm to Patent Compliance Group, the United States, and the public.

24.     Defendant has wrongfully and illegally advertised patent monopolies which it does not possess and, as a result, has benefited by maintaining a substantial market share with respect to the products referenced in this Complaint.

25.     United States Patent No. 4,071,745 (the "'745 patent"), titled *Programmable Time Varying Control System and Method,*, was filed on March 4, 1977, was issued by the United States Patent and Trademark Office (the "USPTO") on January 31, 1978, and expired, at the latest, on March 4, 1997.  (*See* Ex. A.)

- 5 -

26.     United States Patent No. 4,200,910 (the "'910 patent"), titled *Programmable Time Varying Control System and Method*, was filed on January 30, 1978, was issued by the USPTO on April 29, 1980, and expired, at the latest, on January 30, 1998. (*See* Ex. B.)

27.     United States Patent No. 4,771,392 (the "'392 patent"), titled *Programmable Time Varying Control System and Method*, was filed on March 31, 1980, was issued by the USPTO on September 13, 1988, and expired, at the latest, on January 31, 1995. (*See* Ex. C.)

28.     United States Patent No. 4,881,686 (the "'686 patent"), titled *Temperature Recovery Display Device for an Electronic Programmable Thermostat* was filed on October 13, 1988, was issued by the USPTO on November 21, 1989, and expired, at the latest, on October 13, 2008. (*See* Ex. D.)

29.     United States Patent No. 4,911,358 (the "'358 patent"), titled *Temperature Recovery System for an Electronic Programmable Thermostat* was filed on November 29, 1988, was issued by the USPTO on March 29, 1990, and expired, at the latest, on November 29, 2008. (*See* Ex. E.)

30.     United States Patent No. 4,967,382 (the "'382 patent"), titled *Programmable Time Varying Control System and Method*, was filed on January 9, 1987, was issued by the USPTO on October 30, 1990, and expired, at the latest, on October 30, 2007. (*See* Ex. F.)

31.     United States Patent No. 5,012,973 (the "'973 patent"), titled *Window Air Conditioning Unit having a Built-In Programmable Thermostat with Remote Temperature Sensor*, was filed on October 7, 1988, was issued by the USPTO on May 7, 1991, and expired, at the latest, on October 7, 2008. (*See* Ex. G.)

32.     United States Patent No. 5,038,851 (the "'851 patent"), titled *Electronic Programmable Thermostat for a Heating and Cooling System with an Oscillation Control*

*Mechanism*, was filed on October 13, 1988, was issued by the USPTO on August 13, 1991, and expired, at the latest, on October 13, 208, 2008.  (*See* Ex. H.)

33.     United States Patent No. D317,267 (the "'267 patent"), titled *Electronic Programmable Thermostat*, was issued by the USPTO on June 4, 1991 and expired, at the latest, on June 4, 2005. (*See* Ex. I.)

34.     United States Patent No. D317,875 (the "'875 patent"), titled *Electronic Programmable Thermostat*, was issued by the USPTO on July 2, 1991 and expired, at the latest, on July 2, 2005. (*See* Ex. J.)

35.     Because the '745, '910, '392, '686, '358, '382, '973, '851, '267, and '875 patents (collectively the "Expired Patents") are expired, any product or method once covered by the claims of the Expired Patents is no longer protected by the patent laws of the United States with respect to those claims.   When the Expired Patents expired, their formerly protected property entered the public domain.  All monopoly rights in the Expired Patents terminated irrevocably and all products marked with an Expired Patent after expiration were not "patented."

36.     Despite the fact that the claims of the Expired Patents are no longer afforded patent protection, Defendant has and continues to mark certain products with one or more of the Expired Patents.  Specifically, Defendant has and continues to mark the following thermostat models with the indicated Expired Patents:

- *Heat/Cool* Thermostat (Model No. 40135) - '382 patent;
- Electronic Thermostat (Model No. 40135) - '358, '382, and '851 patents;
- Electronic Thermostat (Model No. 40170) - '358, '382, and '851 patents;
- *Just Right* Thermostat (Model No. 42999) - '382 patent;
- *Set & Save* Thermostat (Model No. 44110) - '745, '910, '392, '686, '358, '382, '973, '851, '267, and '875 patents;
- *Set & Save* Thermostat (Model No. 44260) - '382 patent;
- *Set & Save* Thermostat (Model No. 44360) - '745, '910, '392, '686, '358, '382, '973, '851, '267, and '875 patents;
- *Auto Saver* Thermostat (Model No. 44660) - '358, '382, and '851 patents;

- *Easy Saver* Thermostat (Model No. 44860) -'358, '382, and '851 patents;

(*See , e.g.,* Exhibit K).

37.    The products listed in the previous paragraph shall be collectively referred to as the "Patent Expired Products."

38.    Defendant knows that the Expired Patents do not cover the Patent Expired Products.

39.    Alternatively, because all monopoly rights in the Expired Patents have terminated, Defendant cannot have any reasonable belief that the Patent Expired Products are covered by one or more of the Expired Patents.

40.    Defendant intended to and has deceived the public by marking the Patent Expired Products with one or more of the Expired Patents after expiration.

41.    Before expiration, the '973 patent covered or protected, by way of a property right: (i) a room air conditioning system comprising, *inter alia*, an individual air conditioning unit and a programmable thermostat that has a second ambient temperature sensing mode utilizing a second temperature sensor means selectively coupled to said programmable thermostat for sensing the ambient temperature of the predetermined volume of space at a location remote from said programmable thermostat; (ii) a programmable thermostat comprising, *inter alia*, a second ambient temperature sensing mode utilizing a second temperature sensor means selectively coupled to said programmable thermostat for sensing the ambient temperature of the predetermined volume of space at a location remote from said programmable thermostat; and (iii) a thermostat for controlling the on/off switching of an individual air conditioning unit, said thermostat comprising, *inter alia*, second temperature sensor means for sensing the ambient

temperature of the predetermined volume of space at a location remote from said programmable thermostat (the "Scope of the '973").

42.     Despite the fact that the claims of the '973 patent cover only Scope of the '973, Defendant marked (or caused to be marked) the following products that are clearly out of the scope of the '973 patent: (i) *Set & Save* Thermostat (Model No. 44110); and (ii) *Set & Save* Thermostat (Model No. 44360) (the "Out of Scope '973 Products"). While the actual scope of the '973 patent is governed (and the Scope of the '973 is further narrowed) by the complete set of claim limitations, the limitations that are listed as the Scope of the '973 demonstrate that the Out of Scope '973 Products do not practice the '973 patent.

43.     Defendant knew that the '973 patent does not cover the Out of Scope '973 Products.

44.     Alternatively, because the '973 patent unmistakably does not cover the Out of Scope '973 Products, Defendant cannot have any reasonable belief that the Out of Scope '973 Products are patented or covered by the '973 patent.

45.     Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '973 Products with the '973 patent.

46.     Before expiration, the '267 patent only covered or protected, by way of patent property right, an ornamental design for an electronic programmable thermostat as depicted in the figures of the '267 patent (the "Scope of the '267")(*See,* Ex. I).

47.     Despite the fact that the claims of the '267 patent cover only the Scope of the '027, Defendant marked (or caused to be marked) at least the following products that are out of the scope of the '267 patent: (i) *Set & Save* Thermostat (Model No. 44110); and (ii) *Set & Save* Thermostat (Model No. 44360) (the "Out of Scope '267 Marked Products"). The figures of the

- 9 -

'267 patent, which define the Scope of the '267 patent demonstrate that the Out of Scope '267 Products clearly do not practice the '267 patent.

48.     Defendant knew that the '267 patent does not cover the Out of Scope '267 Marked Products.

49.     Alternatively, because the '267 patent unmistakably does not cover the Out of Scope '267 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '267 Marked Products are patented or covered by the '267 patent.

50.     Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '267 Marked Products with the '267 patent.

51.     Before expiration, the '875 patent only covered or protected, by way of patent property right, an ornamental design for an electronic programmable thermostat as depicted in the figures of the '875 patent (the "Scope of the '875")(*See,* Ex. J).

52.     Despite the fact that the claims of the '875 patent cover only the Scope of the '027, Defendant marked (or caused to be marked) at least the following products that are out of the scope of the '875 patent: (i) *Set & Save* Thermostat (Model No. 44110); and (ii) *Set & Save* Thermostat (Model No. 44360) (the "Out of Scope '875 Marked Products"). The figures of the '875 patent, which define the Scope of the '875 patent demonstrate that the Out of Scope '875 Products clearly do not practice the '875 patent.

53.     Defendant knew that the '875 patent does not cover the Out of Scope '875 Marked Products.

54.     Alternatively, because the '875 patent unmistakably does not cover the Out of Scope '875 Marked Products, Defendant cannot have any reasonable belief that the Out of Scope '875 Marked Products are patented or covered by the '875 patent.

- 10 -

55.     Defendant intended to deceive the public by marking (or causing to be marked) the Out of Scope '875 Marked Products with the '875 patent.

## COUNT I
### (FALSE MARKING WITH EXPIRED PATENTS)

56.     Patent Compliance Group incorporates the foregoing paragraphs by reference as if fully set forth herein.

57.     Defendant marked the Patent Expired Products with one or more of the Expired Patents.

58.     Defendant marked the Patent Expired Products with one or more of the Expired Patents after the Expired Patents expired and the monopoly rights to the claims formerly protected by the Expired Patents terminated.

59.     Defendant knew or reasonably should have known that marking the Patent Expired Products with one or more of the Expired Patents after the Expired Patents expired violated Federal patent marking laws which authorize marking only existing and enforceable patent or patent pending claims on a "patented" article.

60.     Defendant intended to deceive the public by marking the Patent Expired Products one or more of the Expired Patents after the Expired Patents expired.

61.     Defendant's actions are in violation of 35 U.S.C. § 292.

## COUNT II
### (FALSE MARKING WITH OUT OF SCOPE PATENTS)

62.     Patent Compliance Group incorporates the foregoing paragraphs by reference as if fully set forth herein.

- 11 -

63.     Defendant falsely marked the Out of Scope '973, '267 and '875 Products with the '973, '267 and '875 patents despite the fact that scope of the respective scopes of '973, '267 and '875 patents do not cover the Out of Scope '973 '267 and '875 Products.

64.     Defendant knew or reasonably should have known that marking the Out of Scope '973 '267 and '875 Products with the'973, '267 and '875 patents violated Federal patent marking laws which authorize marking only existing and enforceable patent or patent pending claims on a "patented" article.

65.     Defendant intended to deceive the public by marking the Out of Scope '973 '267 and '875 Products with the '973 '267 and '875 patents.

66.     Defendant's actions are in violation of 35 U.S.C. § 292.

### PRAYER FOR RELIEF

Patent Compliance Group requests the Court, pursuant to 35 U.S.C. § 292, to:

A.     Enter judgment against Defendant and in favor of Patent Compliance Group for the violations alleged in this Complaint;

B.     Enter an injunction prohibiting Defendant, and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from violating 35 U.S.C. § 292;

C.     Order Defendant to pay a civil monetary fine of up to $500 per false marking "offense," one-half of which shall be paid to the United States and one-half of which shall be paid to Patent Compliance Group;

D.     Enter a judgment and order requiring each Defendant to pay Patent Compliance Group prejudgment and post-judgment interest on the damages awarded;

E.     Order Defendant to pay Patent Compliance Group's costs and attorney fees; and

F.     Grant Patent Compliance Group such other and further relief as it may deem just and equitable.

**JURY DEMAND**

Patent Compliance Group, pursuant to Federal Rule of Civil Procedure 38(b), hereby demands a trial by jury on all issues so triable.

Dated:  February 23, 2010

Respectfully submitted,

**ZWEBER P.C.**

By: _____

Michael C. Zweber
Texas State Bar No. 24003236
Zweber P.C.
4223 Buena Vista St., Suite 4
Telephone:  214-507-0508
Fax: 214-252-0205
mzweber@zweberlaw.com

**ATTORNEY FOR RELATOR**
**PATENT COMPLIANCE GROUP, INC.**

- 13 -

JS 44 (TXND Rev. 2/10)

**CIVIL COVER SHEET**

ORIGINAL

3-10CV0359-P

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Patent Compliance Group

**(b)** County of Residence of First Listed Plaintiff    Dallas County, TX
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Zweber P.C., 4223 Buena Vista, Ste. 4, Dallas, TX (214) 507-0508

**DEFENDANTS**

Hunter Fan Company

County of Residence of First Listed Defendant    Shelby County, TN
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

FEB 23 2010

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. § 292
Brief description of cause:
Qui Tam action for false marking

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) PENDING OR CLOSED:** (See instructions)
JUDGE
DOCKET NUMBER

DATE 02/22/2010
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE