```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

| | | |
|---|---|---|
| **PATENT COMPLIANCE GROUP, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  10-2442 |
| | ) | |
| v. | ) | |
| | ) | |
| **HUNTER FAN CO.,** | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER DENYING DEFENDANT'S MOTION TO STAY

Before the Court is Defendant Hunter Fan Co.'s ("Hunter") June 4, 2010 Motion to Stay.  (See Dkt. No. 17.)  Plaintiff Patent Compliance Group ("PCG") filed a response in opposition on June 25, 2010, to which Hunter replied on July 13, 2010.  (See Dkt. Nos. 29, 36.)  Hunter argues that the Court should stay all proceedings in this case until the United States Court of Appeals for the Federal Circuit releases its opinion in Stauffer v. Brooks Brothers, Nos. 2009-1428, -1430, -1452, which may resolve all issues in this case.  Because Hunter has failed to demonstrate why this Court "should compel [PCG] to stand aside while a litigant in another [case] settles the rule of law that will define the rights of both," the Motion is DENIED.  Landis v. N. Am. Co., 299 U.S. 248, 255 (1936).

**I.     BACKGROUND**

PCG, a Texas corporation, filed suit against Hunter on February 23, 2010, in the Northern District of Texas. (Compl. ¶ 7.)  By Order dated June 7, 2010, Judge Jorge A. Solis transferred PCG's suit to the Western District of Tennessee, where Hunter has its principal place of business.  See Patent Compliance Group, Inc. v. Hunter Fan Co., No. 3:10-CV-0359-P, Order Granting Motion to Transfer Venue, Dkt. No. 20, at 8.  PCG alleges that Hunter violated the false marking statute, 35 U.S.C. § 292(a), by marketing products labeled with one of ten patents that have expired with the intent to deceive the public. (Compl. ¶¶ 25-34.)  Each patent is for a particular feature contained in one of Hunter's array of fans available for sale. (Id.)  When patents have expired, the innovations are no longer protected and have entered the public domain.  (Id. ¶ 35); see Pequignot v. Solo Cup Co., 608 F.3d 1356, 1361 (Fed. Cir. 2010) (holding that an article whose patent has expired is "unpatented" within the meaning of § 292(a)).  PCG seeks the maximum $500 per-falsely-marked article civil penalty under the statue.  See 35 U.S.C. § 292(a) (stating that a violator "[s]hall be fined not more than $500 for every such offense"); Forest Group, Inc. v. Bon Tool Co., 590 F.3d 1295, 1304 (Fed. Cir. 2009) (holding that the $500 fine is to be imposed per article).

PCG is not Hunter's competitor in the fan market. It brings this action under the qui tam[1] provision of the statute, which permits "[a]ny person [to] sue for the penalty." 35 U.S.C. § 292(b). If PCG's action is successful, the statue mandates that half of any court-imposed fine go to the federal government; PCG will retain the other half. See id. (stating that, if a fine is imposed, "one-half shall go to the person suing and the other to the use of the United States").

## II.   ANALYSIS

Hunter argues that the Court should stay all proceedings in this case until the Federal Circuit decides Stauffer. The briefing process is nearly complete, and the parties are waiting for oral argument. (See Defendant's Memorandum in Support of Its Motion to Stay, Dkt. No. 18, at 4.) ("Def's Memo.") The district court in Stauffer concluded that the qui tam relator lacked Article III standing to bring suit under § 292(b) because, as a non-competitor, he had suffered no harm from Brooks Brothers' labeling unpatented products as patented. Stauffer v. Brooks Bros., 615 F. Supp. 2d 248, 255 (S.D.N.Y. 2009). The propriety of that holding is on review at the Federal Circuit, which hears all appeals in patent cases. See

---

[1] Qui tam is short for the Latin phrase qui tam pro domino rege quam pro se ipso in hac parte sequitur, meaning "who pursues this action on our Lord the King's behalf as well as his own." Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 769 n.1 (citing 3 W. Blackstone, Commentaries *160).

3

28 U.S.C. § 1295(a)(1) (giving the Federal Circuit exclusive appellate jurisdiction over all appeals that involve at least one claim arising under the federal patent laws). Hunter asserts that, if the district court's decision in Stauffer is affirmed, PCG's suit must also be dismissed. (Def's Memo. at 4.) Thus, Hunter argues that a stay could prevent the parties and this Court from wasting judicial resources. (Id.) Any stay would be of short duration and would not prejudice PCG. (Id. at 4-5, 8-9.) PCG insists on its right to have its case heard independently of any other case currently pending and argues that, the district court's ruling in Stauffer to the contrary, there is sufficient case law supporting jurisdiction to allow the case to proceed without a stay. (Plaintiff's Response in Opposition, Dkt. No. 29-1, at 2-8.)

A district court has the inherent power to stay a case as part of its ability to control its own docket. Landis, 299 U.S. at 254. The party seeking a stay bears the burden of demonstrating why one is proper and "must make out a clear case of hardship or inequity in being required to go forward." Id. at 255; see also Ohio Envtl. Council v. U.S. Dist. Court, 565 F.2d 393, 396 (6th Cir. 1977). However, "a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." Ohio Envtl. Council, 565 F.2d at 396. Even where

4

the proponent's reasons for the stay are proper, it must demonstrate that the stay will not be "immoderate" in duration or scope. Landis, 299 U.S. at 257.

In Landis, the Supreme Court considered the issue before this Court: whether a district court should stay a case when separate cases in other courts involving the same issue are also pending. Id. at 249. The party seeking the stay in Landis was the federal government. Id. at 250. Forty-seven suits challenging the constitutionality of the Public Utility Holding Company Act of 1935, a New Deal regulatory enactment, were pending in federal courts nationwide. Id. at 252. The North American Company filed its suit in the United States District Court for the District of Columbia. Id. at 249. The government requested, and the district court granted, a stay until the government's preferred test case, pending in the Southern District of New York, was decided. Id. at 253. On review, the Supreme Court vacated the stay. Id. at 259.

The Court held, "Only in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Id. at 255 (Cardozo, J.). That the legal issue in Landis was a novel and complicated issue of constitutional law did not ease the burden that "lay heavily" on the government to demonstrate that the district court should depart from the

5

normal course of affairs – each case proceeding independently on its own time schedule. Id. at 256. The government's effort to prevent any harm from coming to the North American Company during the stay, including consenting to an injunction preventing the government from enforcing the challenged act until the Supreme Court determined its validity, did not tip the scales in favor of a stay. Id. at 250. The North American Company was entitled to its day in court so that its case could be heard on its own merits, unburdened by proceedings in other cases. Id. at 257-58; cf. Yong v. INS, 208 F.3d 1116, 1120-21 (9th Cir. 2000) (vacating a stay because, "considerations of judicial economy," without more, "cannot justify [an] indefinite, and potentially lengthy, stay").

Although the jurisdictional issue Hunter seeks to raise is novel, it hardly rises to the issues "great in complexity, great in their significance" for the nation that the Supreme Court considered in Landis. 299 U.S. at 256. If the interest in judicial economy alone could not earn the federal government a stay in Landis, it cannot justify this Court's granting Hunter's Motion. Cf. id. at 257-58; Yong, 208 F.3d at 1120-21; Ohio Envtl. Council, 565 F.2d at 396. It is also not clear that the stay Hunter requests would be for a brief time. There is no guarantee that the Federal Circuit will issue its ruling quickly, and there is the possibility that the losing party may

6

seek Supreme Court review. See Landis, 299 U.S. at 257 (requiring the "force" of any stay to "be spent within reasonable limits"). Hunter has not met its heavy burden. See id. at 256.

The issue of a qui tam realtor's standing to bring suit is not an issue of first impression. The Federal Circuit has noted that the plain language of § 292(b) allows any member of the public to enforce its prohibition on falsely labeling unpatented items as patented. See Forrest Group, 590 F.3d at 1303. Like Hunter, Forrest Group argued that such an interpretation "would encourage 'a new cottage industry' of false marking litigation," led by entities like PCG. Id. The Federal Circuit was unmoved. Id. ("This, however, is what the clear language of the statue allows.").

More recently, the Federal Circuit has explained what a party must show to prove that a defendant accused of false marking acted with deceptive intent, which the statute requires for liability. See Pequignot, 608 F.3d at 1363-1364. It did so in a case where the qui tam relator, like PCG, was not a competitor of the defendant. Id. at 1359. The Federal Circuit in Pequignot nowhere indicated that there was a question about whether a non-competitor relator had standing to bring a § 292(b) claim – despite the fact that "federal courts have a duty to consider their subject matter jurisdiction in regard to

every case and may raise the issue <u>sua sponte</u>."  <u>See id.</u> at 1360-65; <u>Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.</u>, 556 F.3d 459, 465 (6th Cir. 2009).  <u>See generally</u> <u>Capron v. Van Noorden</u>, 6 U.S. (2 Cranch) 126 (1804).

    The Supreme Court has also found that a <u>qui tam</u> relator has constitutional standing to bring a claim in federal court.  <u>See</u> <u>Vt. Agency of Natural Res.</u>, 529 U.S. at 777-78.  Although the Court was addressing a different <u>qui tam</u> statute, the False Claims Act, 31 U.S.C. § 3730(b)(1), the Court cited § 292(b) in its opinion.  <u>Vt. Agency of Natural Res.</u>, 529 U.S. at 769 n.1.  The Court noted that a relator is an assignee of the federal government who is given the power to redress the harm the government incurs.  <u>Id.</u> at 773-74.  When combined with the lengthy history of <u>qui tam</u> actions under the common law, all doubts that <u>qui tam</u> relators have Article III standing vanished.  <u>See id.</u> at 774-778 (noting that <u>qui tam</u> actions originated at the end of the thirteenth century in English royal courts and were prevalent in the colonial courts when the Constitution was drafted).  Thus, although there is not a case directly on point, there is case law this Court can apply in deciding any jurisdictional motion Hunter may file.  Should the Federal Circuit affirm the district court in <u>Stauffer</u>, this Court would apply any holding relevant to this case.

8

**III.  CONCLUSION**

Because a related case is pending in an appellate court, standing alone, is not sufficient to justify a stay of proceedings, Hunter's Motion to Stay is DENIED.  <u>Landis</u>, 299 U.S. at 255.

So ordered this 31st day of August, 2010.

                                              s/ Samuel H. Mays, Jr.
                                              SAMUEL H. MAYS, JR.
                                              UNITED STATES DISTRICT JUDGE